### ASSOCIATED INDEMNITY CORPORATION v. MANNING et al.
#### No. 9078.

Circuit Court of Appeals, Ninth Circuit.
Nov. 16, 1939.

N. A. Pearson and Evans C. Bunker, both of Seattle, Wash., for appellant.

Arthur I. Moulton, of Portland, Or., and E. H. Kohlhase, of Kelso, Wash., for appellees Beesley et al.

J. C. McCoy, of Longview, Wash., for appellees Manning et al.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant sued under the Declaratory Judgment Act, 28 U.S.C.A. § 400, for a

---

declaration of rights under a general liability policy issued to appellee J. M. Manning. The case was tried to the court, the trial resulting in a judgment in appellees' favor.

J. M. Manning and his wife, under the name of Manning Motors, operated a business consisting of an automobile sales agency, garage and filling station. The two owned also the stock, except one share, in Manning Fuel Oil Company, a corporation having the same address as Manning Motors. The corporation will be referred to as the Oil Company. Manning was president and general manager of the Oil Company, and the business of that company was handled in the office of Manning Motors. The Oil Company paid Manning Motors $100 a month "for storage space for the office, telephone service, and general service to look after the business." The Oil Company owned three delivery trucks, which were stored at Manning Motors. Its only regular employees were one or two drivers.

Appellant wrote a general liability policy in favor of Manning, doing business as Manning Motors. It also issued three liability policies to the Oil Company covering the ownership or use of its trucks. The Oil Company, however, carried no general liability insurance.

One Fleshman was employed by Manning as a sort of utility man, working intermittently for both concerns. Manning testified: "When he works for us, it is charged on our books. When he works for the Fuel Oil Company, it is charged on their books. At times, he does considerable work for the Manning Fuel Oil Company. He delivers oil, goes around and repairs oil burners, which is work for the Manning Fuel Oil Company."

On March 27, 1936, Majerus, a truck driver in the employ of the Oil Company, was about to deliver oil to a customer when the Oil Company, through Manning Motors, received an emergency call from another customer. Fleshman was at the moment working on a car in the garage. He was told by Manning to take a demonstrator (the property of Manning Motors), contact Majerus, who was about two miles away, and instruct him to deliver the oil to the other customer. While returning from this errand, Fleshman was involved in an accident which caused the death of one person and the injury of others.

Claims were made both upon Manning and upon the Oil Company for damages flowing from the accident. With respect to these claims appellant took the position that Fleshman, at the time of the accident, was acting for the Oil Company, not for Manning Motors, hence that the situation was not covered by the general liability policy issued to the latter. This suit was brought to obtain a declaration to that effect and to enjoin the commencement of suits by the claimants. The court refused to enjoin the claimants,[1] and some of them began actions in the state court against both Manning and the Oil Company. These suits terminated in judgments against Manning aggregating over $7,000.[2] The state court held that Manning was liable individually, but dismissed the actions as to the Oil Company.

The court below found that "it was regularly within the scope and purpose of the business operated by J. M. Manning as an individual under the assumed name and style of Manning Motors * * * to accommodate his regular customers by delivering messages in accordance with their requests, all of which was well known to plaintiff before and at the time of issuing its policy of insurance to defendant J. M. Manning, doing business as Manning Motors * * *; that Manning Fuel Oil Company * * * was a regular customer of J. M. Manning, doing business as Manning Motors * * *." It also found that Fleshman was acting as the agent of Manning Motors at the time of the accident.

Appellant contends that these findings are not supported by the evidence. Appellees, while defending the findings, insist that the evidence is not all here, hence the findings are not subject to attack. With respect to the latter proposition, it need only be said that appellant complied with Rule 75 of the Rules of Civil Procedure for the District Courts, 28 U.S.C.A. following section 723c, in effect at the time the appeal was taken. Appellees have not called attention to any material

[1] The suit itself was dismissed for want of jurisdiction, but on appeal the order of dismissal was reversed. 9 Cir., 92 F.2d 168.

[2] Two other claims had not yet been liquidated at the time the decree below was entered.

evidence claimed to have been omitted from the record.

There is substantial evidence in support of the finding that Fleshman was acting as agent for Manning Motors. Immediately prior to the delivery of the message he had been working in the garage of that concern and was on the payroll of Manning Motors. On the trip he drove a car belonging to that concern. The books of the Oil Company showed no charge for the service of delivering the message. Manning testified that when "Fleshman works for the Manning Fuel Oil Company, he is assigned for a period of time however long or short to a service in their behalf and is paid directly by that corporation by its check, but on this occasion that was not true, he was just sent out from the garage as a garage operation." The service would appear to be one which Manning Motors was obligated to perform under its contract with the Oil Company. In the words of Manning, "the Manning Motor Company office took the telephone calls for oil and handled them right there for a consideration of $100 a month."

The other question presented is whether there is evidence in support of the finding that Fleshman's journey to deliver the message was within the scope of the assured's business as defined in the general liability policy. The policy indemnified Manning against any liability imposed by law for damages to person or property caused "by reason of the conduct of the insured's business as described in Item 4 of the Declarations * * * including the operation * * * of any automobile * * * for all purposes in such business and for pleasure use."

The description of the business as set out in Item 4 of the Declarations is as follows: "The insured's business operations are that of Automobile Sales Agency, Storage Garage, Electric Garage, Service Station, Repair Shop or Open Air Parking Station Automobile Sales Agency." In the finding first referred to and quoted above, the trial court apparently had in mind, along with other evidence, the testimony of one Smith, the agent who wrote the policy for appellant. Smith testified that he was familiar with Manning's business, and with the manner in which it was carried on; that he was a customer of Manning Motors; that on various occasions over a period of years prior to the

issuance of the policy, Manning had delivered messages for him; and that Manning desired a policy covering "every use that the cars in his business might be put to"— "at all times."

The coverage of the business of Manning Motors, as defined in the policy, included the operation of any automobile "for all purposes in such business." It is well known that storage garages and service stations perform, as a matter of custom, a variety of services for their patrons for which no specific charge is made. No fixed rule of law on the subject can be laid down. The question whether a particular activity is within the scope of the insured's business, as defined in the policy, is to be determined from the particular facts in each case. The decision below did not need the support of Smith's testimony. We have no difficulty in holding that the facts, aside from that testimony, were such as to support, if not compel, the finding that the activity of the employee of Manning Motors in this instance was within the scope and purpose of the business of that concern, as defined in the policy.

The cases of Williams v. American Automobile Ins. Co., 5 Cir., 44 F.2d 704, and Western Casualty & Surety Co. v. Odom D.C., 21 F.Supp. 574, relied on by appellant, are clearly distinguishable.

Affirmed.