## LEHIGH COAL & NAVIGATION CO. v. CENTRAL R. OF NEW JERSEY.

### No. 484.

District Court, E. D. Pennsylvania.

April 16, 1940.

William Jay Turner, Wm. A. Schnader, and Samuel D. Matlack, all of Philadelphia, Pa., for plaintiff.

Wm. Clarke Mason, of Philadelphia, Pa., and Charles E. Miller, of New York City, for defendant.

KALODNER, District Judge.

Plaintiff's complaint prays for a decree under the Federal Declaratory Judgment Act, Section 274d, Judicial Code, 28 U.S.C.A. § 400.

■ Defendant filed a motion to dismiss. The motion to dismiss is limited to the allegations of the complaint, and, being the equivalent of a demurrer, the court is called upon to interpret the allegations of such complaint, and to accept all such allegations as being true, and to determine whether such complaint presents a cause of action based upon the Federal Declaratory Judgment Act. Auto Mutual Indemnity Co. v. Dupont, D.C., 21 F.Supp. 606, 608; Interstate Cotton Oil Refining Co. v. Refining, Inc., D.C., 22 F.Supp. 678; Northern Motors Corp. v. Divco-Twin Truck Co., D.C., 28 F.Supp. 308.

First, then, as to the allegations of the complaint. They are, that:

Lehigh and Central, on March 31, 1871, entered into an agreement whereby Lehigh leased to Central the Lehigh and Susquehanna Railroad and its branches for the duration of the charter of the two companies. This agreement of March 31, 1871, was amended by agreements in 1883, 1887, 1924, and June 4, 1926.

Under the provisions of Sections 1, 2, 3, and 4 of Article Four of the 1926 agreement, which superseded relevant provisions of the prior agreements, Lehigh is obligated to ship over the leased railroad lines certain amounts of coal mined from its lands in Pennsylvania.

Section 5 of Article Four provides: "Section 5. The party of the first part shall deliver to the party of the second part, annually, within two months after the end of each calendar year a statement of the tonnage mined from said lands and shipped therefrom classified under the subheads above mentioned. The party of the second part shall have the right within two

months after receiving such statement to examine the relevant entries in the books of the party of the first part for the calendar year covered by such statement relating to the tonnage of coal mined by it and the shipment of the same, and the destinations thereof. If the party of the first part shall fail to furnish any such statement within two (2) months after the end of any calendar year, the party of the second part shall itself be given access to the said books of the party of the first part so that the party of the second part may itself obtain the information herein provided for in which event it shall be deemed to have received such statement four months after the end of such calendar year. *Within two months from the receipt of such statement the party of the second part shall have the right to give written notice of demands asserted by it in respect of any alleged diversion of tonnage contrary to this Article Four during the preceding calendar year; and unless the matter be adjusted by agreement the matter may be referred to arbitration under Article Seven hereof within four months after the giving of such notice by[1] the party of the first part, and unless such notice be given within such two months, the party of the second part shall have no right to assert thereafter any such demands in respect of such preceding calendar year. In such arbitration the arbitrators or sole arbitrator therein may hear and determine any claim that may be presented by either party with reasonable notice to the other in respect of the shipment of tonnage during said preceding calendar year.*" (Italics supplied.)

Since the effective date of the 1926 agreement the provisions of Section 5 of Article Four have been complied with by delivery to Central annually of the required statement of the tonnage mined from and shipped from Lehigh's lands, and prior to the year 1939 Central did not exercise this right under Section 5 to give written notice of demands asserted by it in respect to any alleged diversion of tonnage contrary to the provisions of Article Four during any calendar year.

On February 23, 1939, the required statement for the calendar year 1938 was delivered by Lehigh to Central. On April 21, 1939, Central gave written notice to Lehigh of certain demands in respect to alleged diversion of tonnage in violation of Article Four not only for the year 1938 but for every year subsequent to the 1926 agreement. The written notice also made claim that Lehigh is obligated to ship sufficient coal over the leased railroad lines to enable Central to earn enough revenue to pay the stipulated rental which, for the year 1938, after adjustments, amounted to $2,279,096.50; that the plaintiff had failed to do so; that in compensation for the damage thereby suffered by Central the latter demanded a reduction of the rental provided for in the 1926 agreement to $1,567,801 a year.

Subsequently, on August 15, 1939, Central notified Lehigh in writing of its election to submit to arbitration the matters raised by its notice of demands of April 21, 1939, and of its nomination of an arbitrator.

Lehigh advised Central of its willingness to submit to arbitration all questions with respect to alleged diversions of tonnage during the year 1938, but denied the right of Central to make any demands or to submit to arbitration any demands respecting diversions of coal prior to the year 1938. Additionally, Lehigh questions Central's contention that the former is bound by the 1926 agreement to ship sufficient tonnage over the leased railroad lines to enable Central to earn sufficient revenue to pay the stipulated rental. Lehigh contends that Central's obligation to pay the stipulated rental is absolute and unqualified, subject only to specific adjustments provided for in Article One of the 1926 agreement. Lehigh further asserts that the arbitration provisions of the 1926 agreement give no authority to arbitrators to reduce the stipulated rental.

The complaint, pointing out that an actual controversy exists between Lehigh and Central with respect to the scope of the matters to be submitted to arbitration pursuant to the provisions of the 1926 agreement, prays for declaratory relief to define Lehigh's rights, and its legal relations with Central under the agreement.

Specifically, the complaint asks that the court enter a judgment declaring (1) that Central is without right to assert any demands with respect to alleged diversions of tonnage of coal mined or shipped from Lehigh's lands prior to the calendar year 1938; (2) that Central may not, under the

---

[1] The word "by" is an obvious error in the phraseology of this sentence. The section deals only with notice "to" the party of the first part—Lehigh.

provisions of the 1926 agreement, submit to arbitration any matters in respect to the alleged diversions prior to the calendar year 1938; (3) that Lehigh is not obligated to ship sufficient coal over the leased lines to enable Central to earn enough revenue to pay the stipulated rental; and (4) that the arbitrators have no power under the 1926 agreement to order a reduction in the stipulated rental.

In support of its prayer for declaratory relief, Lehigh alleges that it would subject both parties to "enormous" expense and loss of time should the arbitration proceed without a precise definition of the scope of the arbitration and of the issues involved, pointing out that should the arbitrators consider all the matters covered in Central's letter of April 21, 1939, that it would be necessary to examine Lehigh's voluminous records pertaining to the millions of tons of coal mined and shipped since 1926, and to take testimony with respect thereto, and that if Lehigh's contentions are ultimately upheld the time and expense devoted to the investigation of matters arising prior to 1938 would be entirely wasted.

As to the motion to dismiss the complaint:

Briefly stated, the motion to dismiss is premised on the contention of Central that this court has no jurisdiction under the Declaratory Judgment Act over arbitration proceedings between the parties, and therefore cannot determine the issues to be presented to the arbitrators nor can it prohibit either party from submitting to arbitration any matter in dispute between the parties, nor can it direct the conduct of the arbitration by the arbitrators or limit their decision with respect to issues of fact or conclusions of law.

The issue thus presented by the pleadings is—Does the court have jurisdiction under the Declaratory Judgment Act with respect to an arbitration proceeding provided-for in a contract and involving rights established by that contract, where an actual controversy exists as to the legal effect of certain disputed provisions of the contract?

The fact is undisputed that there is an actual controversy between the parties, and that the controversy arises because of diametrically opposed constructions by the opposing parties of the provisions of the 1926 agreement.

The controversy is as to the scope of the arbitration and not as to the arbitration proceeding itself. There is no disagreement that the arbitration proceeding is proper as to the year 1938; the disagreement results from the contention of Lehigh that under the 1926 agreement it is limited to 1938, while Central contends it may embrace the years 1926 to 1937, inclusive.

It cannot be questioned that ultimately this court will be required to pass upon this controversy. There can be no question, too, that in the event the scope of the arbitration is permitted to embrace the years 1926 to 1937, inclusive, and the court eventually rules that action to be in error, that the parties will be needlessly subjected to tremendous expense and fruitless consumption of time.

Decisions interpretive of the Declaratory Judgment Act have established the following principles:

(1) Existence of an actual controversy is a prerequisite to declaratory relief—the controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests;

(2) A declaratory judgment should be granted where it will serve a useful purpose in clarifying and settling legal relations and will terminate and afford relief from insecurity, uncertainty and controversy.

(3) The discretion to grant or refuse declaratory relief should be liberally exercised to effectuate the purposes of the Declaratory Judgment Act and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations;

(4) The granting of declaratory relief is a matter resting in the court's discretion.

(5) The primary object of the Declaratory Judgment Act is to afford a speedy and inexpensive method of adjudicating legal disputes before damage has actually been suffered, and the statute should be liberally construed to that end.

(6) Construction and interpretation of written instruments (including contracts, insurance policies, statutes, ordinances, wills, and trusts) is the principle function of a declaratory judgment proceeding.

(7) Existence of another remedy does not preclude relief by way of declaratory judgment.

The principles above enumerated have been stated in the following cases: Nashville, Chattanooga & St. Louis Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Ashwander et al. v. Tennessee Valley Authority et al., 297 U.S. 288, 325, 56 S.Ct. 466, 80 L.Ed. 688; Ætna Life Ins. Co. v. Haworth et al., 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Zenie Bros. v. Miskend et al., D.C., 10 F.Supp. 779, 782; Ætna Casualty & Surety Co. v. Quarles et al., 4 Cir., 92 F.2d 321, 324; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 F.2d 105; Interstate Cotton Oil Refining Co. v. Refining, Inc., D.C., 22 F.Supp. 678; Northern Motors Corp. v. Divco-Twin Truck Co., D.C., 28 F.Supp. 308; Derman et al. v. Gersten et al., D.C., 22 F.Supp. 877; Gully, Tax Collector, et al. v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145; Carpenter et al. v. Edmonson, 5 Cir., 92 F.2d 895; Auto Mut. Indemnity Co. v. Dupont et al., D.C., 21 F.Supp. 606, 608; National Pigments & Chemical Co. v. C. K. Williams & Co., 8 Cir., 94 F.2d 792; Davis v. American Foundry Equipment Co., 7 Cir., 94 F.2d 441, 115 A.L.R. 1486; Employers' Liability Assur. Corp., Limited, v. Ryan et al., 6 Cir., 109 F.2d 690, 691; Hann v. Venetian Blind Corp. et al., D.C., 15 F.Supp. 372, 375; Stephenson et al. v. Equitable Life Assur. Soc. of the United States, 4 Cir., 92 F.2d 406, 408; Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166, 168; Borchard, Declaratory Judgments.

Under Rule 57, Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, it is specifically provided: "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

As was stated in Employers' Liability Assur. Corp., Limited, v. Ryan et al., supra, Rule 57 has crystallized the prevailing view that the Declaratory Judgment Act furnishes an additional remedy which is not to be denied the plaintiff because of the pendency of another suit. See, also, Milwaukee Gas Specialty Co. v. Mercoid Corp., 7 Cir., 104 F.2d 589; Ohio Casualty Ins. Co. v. Richards et al., D.C., 27 F.Supp. 18.

Numerous cases have recently held that declaratory relief is available to insurance companies upon the question as to whether or not the insurers are obligated to defend and indemnify the insured against claims upon which suits are threatening or already brought. Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665, 669; Ætna Life Ins. Co. of Hartford, Conn., v. Martin, 8 Cir., 108 F.2d 824; Pacific Indemnity Co. v. McDonald, 9 Cir., 107 F.2d 446; Associated Indemnity Corporation v. Manning et al., 9 Cir., 107 F.2d 362; American Casualty Co. of Reading, Pa., v. Windham, 5 Cir., 107 F.2d 88.

Applying the criteria above stated to the instant proceeding, the conclusion is inescapable that the motion to dismiss must be denied.

■ There exists here an actual controversy, definite and concrete, touching the legal relations of parties having adverse legal interests. A declaratory judgment in the instant proceeding will serve a useful purpose in clarifying and settling the legal relations between the parties and will afford relief from uncertainty, insecurity and controversy. The declaratory relief will avoid serious financial damage. The complaint involves the construction of a contract between the parties—a primary object of a declaratory judgment proceeding. Further, this is clearly a case in which a proper exercise of the court's discretion warrants consideration of the grant of declaratory relief.

■ Rule 57 disposes of Central's contention that the Federal Arbitration Act of February 12, 1925, 9 U.S.C.A. §§ 1 to 15, inclusive, controls the arbitration and affords ample protection to Lehigh against actions or decisions by the arbitrators contrary to Lehigh's right, and that an "arbitration" places the arbitrators in a position higher than a "court of co-ordinate jurisdiction" and therefore this court has no jurisdiction.

It was previously stated in this opinion that this court, in the event that the present prayer for declaratory relief is dismissed, will ultimately be called upon to construe the disputed contract, no matter what may be the ruling of the arbitrators as to their jurisdiction or the "time" scope for arbitration of the 1926 agreement.

This is conceded by counsel for Central in a memorandum filed on the motion to defer the arbitration proceedings. At the bottom of page 2 of that memorandum counsel for Central stated: "* * * The decisions of the arbitrators when finally rendered, if objectionable to the plaintiff, will be subject to the review of this court."

It is well settled that a submission to arbitration is a contract subject to the laws governing contracts in general and must have all the elements necessary to a contract, and the interpretation and construction of written submissions is a question for the court. 6 C.J.S. Arbitration and Award, § 8, § 27, pages 157, 166.

Another statement of the rule is found in 3 American Jurisprudence, section 41, page 868: "Interpretation of arbitration agreements is ordinarily for the court. It is for the court, not the arbitrators, to decide whether the latter have exceeded their powers under the submission or have refused to exercise them, for since the submission is the foundation of the arbitrators' jurisdiction, their construction of it with respect to their own powers, unless clearly pursuant to its terms, is not conclusive." See, also, 3 American Jurisprudence, section 106, pp. 932, 933; section 132, p. 955; section 135, p. 959; section 150, p. 971; 6 C.J.S., Arbitration and Award, § 80, p. 221.

"Under the recent arbitration statutes the matter may also be put in issue when the statutory stay of trial is applied for, or when enforcement proceedings are instituted with respect to the arbitration agreement, or, if an award has been rendered, when proceedings to enforce the award are defended on the ground that the arbitrators decided too much or too little, or where the award is directly attacked to have it vacated and set aside for such reasons.

"It is clear that the courts will review the question of what the parties agreed to arbitrate when it is raised in any of the foregoing cases unless the parties in the given contract have agreed that the arbitrators shall finally decide their own jurisdiction. The courts do not readily infer such an agreement." Sturges, Commercial Arbitrations and Awards, pages 144, 145.

The rule stated above prevails in Pennsylvania. See Jacob v. Weisser, 207 Pa. 484, 56 A. 1065.

Under Section 10 (d) of the Federal Arbitration Act of 1925, supra, it is provided that the arbitrators' award may be vacated "where the arbitrators exceeded their powers * * *."

In conclusion, as I stated at the time of oral argument, it is plain that ultimately this court will be required to interpret the 1926 agreement. Summed up, it is a case of "Eventually—why not now?"

In my judgment, the court has jurisdiction and the complaint sets forth a cause of action which calls for consideration and determination of the issues between the parties.

Accordingly, for the reasons stated, the motion to dismiss is denied.