**COMMERCIAL METALS COMPANY,**
**Plaintiff,**

v.

**INTERNATIONAL UNION MARINE**
**CORPORATION, Defendant.**

**No. 67 Civ. 4702.**

United States District Court
S. D. New York.

Dec. 30, 1968.

Burlingham, Underwood, Wright, White & Lord, New York City, for plaintiff.

Dunn & Zuckerman, New York City, for defendant.

MANSFIELD, District Judge.

In this action for breach of a charter party contract, plaintiff, charterer of the ship, moves for a stay of litigation and an order directing defendant shipowner to proceed to arbitration in accordance with the contract's arbitration clause, to which defendant objects on the ground that plaintiff, by institution and prosecution of the litigation, has waived its right to arbitration. The motion is granted.

On February 16, 1967, the parties entered into a charter party contract whereby defendant, the owner of the S. S. Gilia, agreed to tender the ship to plaintiff at certain United States ports for shipment of a cargo of metal to Japan, for which the plaintiff agreed to pay lump sum freight in the sum of $200,500. Paragraph 41 of the charter contract contained the following arbitration clause:

"It is mutually agreed that should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York for arbitration, one to be appointed by each of the parties hereto, and the third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men. Should the two so chosen not be able to agree who the third Arbiter should be, then the New York Produce Exchange is to appoint such third Arbitrator."

The contract was modified in September of 1967 to change the laydays for tender of the ship, originally agreed upon as the period October 10, 1967 to November 10, 1967, to the period December 1–31, 1967.

Plaintiff alleges that following the execution of the contract the charter party market rose, whereupon defendant entered into another charter party contract with third parties, whereby it agreed to tender the same ship to them during the period from December 13–30, 1967, for shipment of a cargo of wheat from the United States to Pakistan at the more profitable lump sum freight figure of $316,360, which contract the defendant performed, making it impossible for it to tender the ship to the plaintiff by December 31, 1967 or within a reasonable time thereafter because of the time required for the round-trip from the United States to Karachi, India.

On October 31, 1967, after learning of defendant's entry into the charter party contract with third parties, plaintiff filed a complaint in the United States District Court for the Western District of Washington, Southern Division, seeking damages and an attachment of the ship because of defendant's alleged breach of its contract with plaintiff by defendant's entry into the contract with third parties which would prevent it from performing its charter party contract with plaintiff. Although the complaint attached a copy of the latter contract, including the aforementioned arbitration clause, it did not specifically refer to the arbitration clause or otherwise indicate an intent to invoke it. Security was obtained by attachment of the ship, following which defendant posted a surety bond for release of the vessel and by stipulation of the parties the action was transferred to this district. As originally filed the complaint

alleged that defendant's agreement to charter the ship to the third parties constituted an anticipatory repudiation of the February 16, 1967 contract, as amended, for the reason that

"The GILIA cannot load its cargo at the North Pacific port, proceed to Karchi, secure a berth at Karachi, discharge the wheat and return to the U. S. Atlantic Coast or Gulf by December 31, 1967."

Pursuant to Rule 12(b) (6) defendant moved to dismiss the complaint for failure to state a claim on its face. On April 8, 1968 Judge Cooper denied the motion in a memorandum decision noting that while the December 31, 1967 delivery date fixed the time within which the plaintiff had an option to cancel, the defendant's obligation under the contract was to tender the ship with reasonable dispatch rather than by the December 31st date. In characterizing the claim as barely sufficient, he was not of course passing upon its merits and did not have before him evidence indicating the extent to which time might be of the essence, such as the purposes for which the metal was to be shipped, the custom of the trade, and the like. See Davison v. Von Lingen, 113 U.S. 40, 5 S.Ct. 346, 28 L.Ed. 885 (1885). Furthermore, plaintiff contends that if the Court had known all of these facts, it would conclude that under the circumstances defendant's entry into the charter party contract with third parties for transport of the wheat to Karachi at the very time that it was contemplated that the ship would be made available for transportation of plaintiff's metal would, if defendant adhered to the Karachi charter party, make it impossible for it to tender the ship within a reasonable time. It is hornbook law that such a manifestation of intention not to perform would constitute an anticipatory repudiation and an actionable breach of the contract with plaintiff. Lovell v. St. Louis Mutual Life Ins. Co., 111 U.S. 264, 274, 4 S.Ct. 390, 28 L.Ed. 423 (1884); Cavalliotis v. P. N. Gray & Co., 293 F. 1018 (2d Cir. 1923), affirming 276 F. 565 (E.D.N.Y.1921).

In compliance with the suggestion inherent in Judge Cooper's decision, plaintiff on April 12, 1968, filed an amended complaint alleging that the Karachi charter contract not only would, but in fact did, cause defendant to breach its obligation to tender the ship within a reasonable time. More important for present purposes, Paragraph 14 of the amended complaint alleged:

"14. Clause 41 of the charter party provides that disputes between the parties shall be referred to three persons at New York for arbitration, one to be appointed by each of the parties hereto, and the third by the two so chosen. The plaintiff expressly reserves its right to arbitrate any and all issues and disputes between the parties."

Following defendant's filing of its answer on April 29, 1968, coupled with a notice to take defendant's deposition on May 14, 1968, plaintiff's attorneys on May 8, 1968, mailed to defendant's counsel a letter naming an arbitrator on behalf of plaintiff and calling upon defendant to nominate an arbitrator in accordance with the above-quoted paragraph. When the defendant refused to appoint an arbitrator, plaintiff made the present application on May 13, 1968, for an order designating an arbitrator, directing that arbitration proceed, and staying all other proceedings herein until the arbitration has been completed.

Defendant opposes plaintiff's application on three grounds. First it urges that by bringing suit for anticipatory repudiation of the contract plaintiff itself repudiated the contract including the arbitration clause, thereby excusing plaintiff from performance; secondly, that plaintiff thereby elected to invoke the remedies afforded by the court in lieu of arbitration and was thereafter estopped and precluded from invoking arbitration; thirdly, that plaintiff's claim is defective by reason of its failure to allege and prove plaintiff's own willingness to ship the metal on the

chartered vessel. All three arguments must be rejected as wholly devoid of merit.

■■ Plaintiff's mere institution of a libel for damages and its attachment of the ship did not excuse defendant from its obligation to tender the ship within a reasonable time as required by the charter party contract. Plaintiff's resort to these remedies did not constitute a repudiation of the contract for the reason that, according to plaintiff, defendant had already repudiated it, necessitating plaintiff's suit for breach. Faced with a plain and practical problem, the prospect that the departure of the vessel from these shores would leave it with no meaningful remedy, especially since specific performance of charter party contracts will not ordinarily be ordered, plaintiff resorted to the libel and attachment of the ship as a means of protecting itself and with the hope that the suit might induce the defendant to tender the ship within a reasonable time rather than (in plaintiff's view) abandon or repudiate its obligations in lieu of a more lucrative fee in a rising charter market. Prior to the institution of suit plaintiff had been unsuccessful over a period of several weeks in efforts to induce defendant to specify when the ship would be furnished, and on December 21, 1967, after commencement of the libel proceeding, plaintiff's counsel wrote defendant asking it when it would be willing to tender the ship or tender substitute tonnage, which is hardly consistent with the theory that the plaintiff had repudiated the contract. On the contrary, plaintiff was in effect offering defendant the opportunity to retract its alleged repudiation. See Corbin on Contracts, Vol. 4, § 980, p. 930.

■ Nor did plaintiff's institution of the libel proceeding and attachment constitute a waiver or election precluding arbitration. That such procedure may be pursued without waiver is expressly recognized by Title 9 U.S.C. § 8 which provides:

"If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

As the Court of Appeals stated recently in a learned opinion by Judge Kaufman

"[T]here is an overriding federal policy favoring arbitration. Waiver, therefore, is not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party, Kulukundis, supra, (126 F.2d 978 (2d Cir. 1942)) cannot carry the day." Carcich v. Rederi A/B Nardie, 389 F.2d 692 at 696 (2d Cir. 1968).

The mere filing of a complaint does not constitute a waiver. Chatham Shipping Co. v. Fertex S.S. Corp., 352 F.2d 291, 293 (2d Cir. 1965). The essential test is whether the pursuit of a remedy other than arbitration has worked substantial prejudice to the other party. See Graig Shipping Co. v. Midland Overseas Shipping Corp., 259 F.Supp. 929 (S.D.N.Y. 1966). Defendant here fails to show sufficient prejudice to it as a result of plaintiff's pursuit of the present suit. As already noted the institution of the suit as a means of obtaining security preliminary to invocation of arbitration is recognized by statute. Title 9 U.S.C. § 8. Although the original complaint did not specifically indicate an intent to invoke arbitration, the attachment of a copy of the charter party contract, including the arbitration clause, to the complaint, coupled with the defendant's presumed knowledge of Title 9 U.S.C. § 8, indicated the possibility that plaintiff might seek to arbitrate. Moreover, except for defendant's motion to dismiss pursuant to Rule 12(b) (6), F.R.C.P., which did not constitute the equivalent of an answer, see 3 Moore's Federal

Practice § 15.07[2], p. 852, nothing of consequence occurred in the lawsuit prior to the plaintiff's filing of the amended complaint which clearly reserved plaintiff's right to arbitrate under the charter party contract and negated any inference of intent to waive. Defendant has not shown that it expended any substantial amounts or took any other steps to its detriment prior to the filing of the amended complaint. On the contrary, as late as December 21, 1967, it was aware of plaintiff's desire to have the ship tendered for transportation of the metal. Under the circumstances, therefore, in the absence of any substantial prejudice to the defendant, plaintiff's conduct did not constitute a waiver or election.

Defendant's third contention, that plaintiff's claim is fatally defective for failure to show a willingness to ship the metal according to the charter party contract, is hardly deserving of mention.

"A repudiation or other total breach by one party enables the other to get a judgment for damages or for restitution without performing acts that would otherwise have been conditions precedent. It is no longer necessary for the plaintiff to perform or to tender performance." Corbin on Contracts, Vol. 4, § 977, p. 920; see Allegheny Valley Brick Co. v. C. W. Raymond Co., 219 F. 477 (2d Cir. 1914).

Moreover, nothing in the contract required the plaintiff to ship the cargo, and it was free to sublet the charter or to sail the ship empty. But even if such an obligation existed, plaintiff has adduced evidence indicating that it was ready and willing to ship metal as planned on the charter vessel even after the attachment.

The essential question presented by this controversy, which is one definitely within the expertise of commercial men of the type usually appointed in arbitration of such matters, is whether the defendant's Karachi charter of the vessel to third parties made it impossible as a practical matter for it to tender the ship to plaintiff within a reasonable time.

Plaintiff's motion is granted.

Settle order.