MARLIN OIL CORPORATION and Veldo H. Brewer Company, et al., Plaintiffs,

v.

COLORADO INTERSTATE GAS COMPANY, Defendant.

No. CIV-87-1944-A.

United States District Court, W.D. Oklahoma.

Dec. 7, 1988.

Steven Lewis, Sam Hammons, Mark A. Jones, Cheryl Plaxico Hunter, Hammons & Hunter, Oklahoma City, Okl., for plaintiffs.

H.B. Watson, Jr., William K. Elias, Donna N. Blakley, Watson & McKenzie, Oklahoma City, Okl., and Michael L. Williams, Kirk R. McCormick, Donald S. Quick, Colorado Interstate Gas Co., Colorado Springs, Colo., for defendant.

## ORDER

ALLEY, District Judge.

The defendant, Colorado Interstate Gas Company (CIG), moves the Court under the Federal Arbitration Act to stay the proceedings on the plaintiffs' fifth cause of action Generally, in the fifth cause of action, the plaintiffs allege that CIG is liable for breach of contract because CIG failed to adequately compensate the plaintiffs for deregulated gas under the pricing formula of two take-or-pay contracts.[1] As relief, the plaintiffs demand judgment against CIG for the deficiency under the two contracts. Alternatively, the plaintiffs request a declaratory judgment on certain issues that are largely determinative of their contractual rights to payment from CIG. For the reasons noted below, the Court grants the defendant's motion.

### I.

At the heart of this dispute are the arbitration provisions of two take-or-pay contracts between the defendant, CIG, and the plaintiffs. The parties executed the two contracts in 1978, one in December and the other in April. They generally provide for CIG's purchase of certain quantities of natural gas from the plaintiffs. In identical language, the contracts anticipate the deregulation of natural gas prices. They specify that, in the event of deregulation, the sales price of the natural gas is to be the average of the "two highest prices" being paid by companies in the industry for gas of "substantially the same quality and comparable terms and conditions," ninety days after deregulation in specified Oklahoma counties.[2]

---

1. By order dated 4 November 1988, the Court dismissed the plaintiffs' claim of conversion and prayer for punitive damages, stated in their fifth cause of action, *without* prejudice.

2. In full, the provisions state that:
   (c) If at any time during the term hereof the FERC (or any successor agency having jurisdiction over the rates charged for gas sold hereunder) ceases to have jurisdiction over the price charged hereunder, Seller shall have the right to request a redetermination of the price at which gas is to be sold thereafter. Any such request shall be made at Seller's option following the effective date of such deregulation. The initial redetermined price shall be effective 90 days following the date of deregulation and shall be the average of the two highest prices being paid 90 days following the date of deregulation by an interstate or intrastate pipeline company for gas of substantially the same quality and under comparable terms and conditions produced in Beaver, Cimarron, Ellis, Harper, Texas, and

## II.

As the foundation for its motion, the defendant directs the Court to the Federal Arbitration Act. 9 U.S.C. §§ 1–4 (1982). In part, the Act targets the problems of delay and expense that are generally associated with courtroom litigation by making arbitration agreements enforceable against contractual parties. *See In re Mercury Construc. Corp. v. Moses H. Cone Memorial Hosp.*, 656 F.2d 933, 938–39 (4th Cir. 1981) (en banc), *aff'd*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Hanes Corp. v. Millard*, 531 F.2d 585, 597 (D.C.Cir.1976); *Collins Radio Co. v. Ex–Cello Corp.*, 467 F.2d 995, 998 (8th Cir.1972). As long recognized by the courts, the Federal Arbitration Act embodies a "strong pro-arbitration policy." *Tai Ping Ins. Co. v. M/V Warschau*, 731 F.2d 1141, 1144 (5th Cir.1984); *see, e.g., Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1360 (10th Cir.1971); Note, *Arbitrability of Disputes Under the Federal Arbitration Act*, 71 Iowa L.Rev. 1137, 1143 (1986).

Section 3 of the Arbitration Act authorizes federal courts to stay judicial proceedings as to particular issues when the courts are satisfied that the issues are indeed "referable to arbitration," and the applicants for stays are not in "default." 9 U.S.C. § 3.[3] Therefore, in ruling on the defendant's motion, the Court must focus on two issues: (1) arbitrability; and (2) waiver. *See C. Itoh & Co. v. Jordan International Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977); *Pioneer Supply Co. v. American Meter Co.*, 484 F.Supp. 227, 229 (W.D.Okla. 1979); *see also* M. Domke, *Commercial Arbitration* § 19.01, at 276 (1984) (noting that a court *"must* stay the action once it finds the dispute is referable to arbitration and no other impediments prevent the application of the arbitration clause"). These two issues are addressed in turn.

### A. Arbitrability

The plaintiffs contend that a stay of the fifth cause of action would be erroneous because the conditions for invoking the contractual arbitration clauses have not been satisfied. According to the plaintiffs, by their terms the arbitration provisions are only activated by a dispute between the parties over the "two highest prices" and the practical meaning of "substantially the same quality and comparable terms and conditions." Here, argue the plaintiffs, the limited nature of the communication between the parties has not provided the basis for a dispute regarding these two factors. The defendant has not unilaterally attempted to redetermine the natural gas price, nor has the defendant communicated to the plaintiffs its understanding of the highest-price and substantially-the-same components of the price term. Thus, the plaintiffs contend that there is no ripe arbitrable dispute.

The Court finds, however, that the plaintiffs' interpretation of the two arbitration clauses is overly narrow, given the potent bias of the Arbitration Act in favor of arbitration. To effectuate the Act's policy, the courts generally give a "liberal reading to arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Construc. Corp.*, 460 U.S. 1, 22 n. 27, 103 S.Ct.

Woodward Counties, Oklahoma, which said price, as so redetermined shall be redetermined on the same basis and shall be effective at the expiration of each 2–year period thereafter, following the effective date of such deregulation; provided, however, that no price determined as provided in this Paragraph (c) shall become effective if such redetermined price is lower than the price then otherwise being paid under this Agreement.

In event the parties hereto are unable to agree on which contracts contain the "two highest prices," or on what constitutes "substantially the same quality and comparable terms and conditions," then the matter shall be determined by arbitration. . . ."

**3.** In full, section 3 provides that:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

927, 940 n. 27, 74 L.Ed.2d 765 (1983). That is, they resolve all doubts regarding the arbitrability of issues in favor of arbitration. *See Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir.1983); *Brener v. Becker Paribas Inc.*, 628 F.Supp. 442, 451 (S.D.N.Y.1985); Domke, *supra*, § 12.02, at 155 (noting "the trend in modern arbitration law that whenever possible, arbitration should be favored"). With little difficulty, the Court may read the language of the arbitration clauses at issue as encompassing all disputes between the parties involving the determination of the "fair value" of the plaintiffs' deregulated gas.

Under the two arbitration clauses, the arbitrators' task is to arrive at a determination regarding the "fair value" of the deregulated natural gas. The two central determinations that make up the "fair value" go to the highest-price and substantially-the-same factors. The clauses' drafters recognized the importance of these two factors and chose to highlight them. Such contractual emphasis, however, does not suggest an intent to exclude other issues arising in connection with the determination of "fair value."[4] Thus, the parties' dispute need not be precisely phrased in terms of the highest-price and substantially-the-same factors to be covered by the arbitration clauses.

■ With this broader reading of the arbitration clauses in mind, the Court concludes that the price redetermination issue, raised by the averments of the plaintiffs' fifth cause of action, is arbitrable. The alleged infrequency of contact between the parties is immaterial. Following the deregulation of the plaintiffs' gas, CIG informed the plaintiffs that, absent a request by the plaintiffs for a price redetermination, CIG's contractual obligation was to pay the plaintiffs only a commercially reasonable price for their natural gas. In response, the plaintiffs purported to exercise their rights to request a price redetermination by asking CIG to inform them of "the highest price CIG paid for gas." As described, this dialogue between CIG and the plaintiffs on price redetermination clearly evidences a dispute as to the "fair value" of the plaintiffs' deregulated gas. As such, the dispute is covered by the arbitration provisions of the two contracts.

■ With respect to the defendant's motion to stay, however, the Court's finding of arbitrability on the price redetermination issue does not end the analysis. The plaintiffs assert that there are "additional matters other than the proper price for Plaintiffs' gas" raised in their fifth cause of action. Specifically, the plaintiffs contend that the additional issues for resolution include the following: (1) whether the plaintiffs have the sole contractual right to call for a price redetermination; (2) whether the properly redetermined price for the plaintiffs' gas is less than the price otherwise applicable under the contract; and (3) what volume of gas is covered by the properly redetermined price.

Under the parties' agreement, however, the extent to which these "additional matters" are nonarbitrable is open to serious question. For example, in varying degrees, the plaintiffs' three examples of "additional matters" appear to fall within the scope of the parties' dispute on price redetermination. As such, the three issues may be arbitrable as necessary sub-issues, to be resolved by the arbitrators in their ruling on the price redetermination question. *See Prudential Lines*, 704 F.2d at 59 (noting that the resolution of an arbitrable dispute may "necessarily implicate[ ] resolution of several sub-issues); *McAllister Bros. v. A*

---

**4.** The central focus of arbitrability analysis is, of course, the parties' intent. *See Hanes*, 531 F.2d at 598; *Domke, supra*, § 12, at 151; *cf. Fox v. Merrill Lynch Co.*, 453 F.Supp. 561, 564 (S.D.N.Y.1978) (noting that the interpretation of the scope of arbitration agreements is governed by "ordinary contract principles"). Consequently, courts are alert to words of limitation. *See Prudential*, 704 F.2d at 64; Note, *supra*, at 1149–50, 1157. In their brief, the plaintiffs emphasize

the term "only." However, as they discuss the highest-price and substantially-the-same factors, the arbitration clauses do not use the term "only" or similar language of limitation. Here, the contractual limitation must be viewed more broadly: not every dispute arising under or related to the parties' contracts are subject to mandatory arbitration, only those disputes involving the determination of the "fair value" of plaintiffs' deregulated gas.

& S Transp. Co., 621 F.2d 519, 523 (2d Cir.1980) (holding that whether the contract was abandoned by movant was "inextricably tied up with the merits of the underlying [arbitrable] dispute" regarding the adequacy of the movant's contract performance). In any event, even if the plaintiffs' fifth cause of action does raise nonarbitrable issues, the Court may decline to address these issues until after the arbitrators' work is done. *See Collins Radio*, 467 F.2d at 1000; *Fox*, 453 F.Supp. at 567.

Absent the bar of waiver, then, the plaintiffs' fifth cause of action is subject to stay under the Arbitration Act. The Court thus proceeds to examine the waiver issue.

### B. Waiver

The plaintiffs argue that CIG has waived its right to enforce the arbitration provisions of the take-or-pay contracts because CIG has engaged in litigation on the price redetermination issue. Principally, in support of their waiver contention, the plaintiffs note that CIG first raised the price redetermination issue in a judicial forum— not the plaintiffs—by instituting a declaratory judgment action in May 1987. However, under the modern law of waiver, the Court finds that the plaintiffs' reliance on CIG's prior litigation is misplaced.

Because of their "healthy regard" for the pro-arbitration policy of federal law, courts do not infer waiver lightly. *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941; *see, e.g., Sweater Bee v. Manhattan Industries*, 754 F.2d 457, 461, 466 (2d Cir.), *cert. den.*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); *Hart*, 453 F.2d at 1360; *cf. In re Mercury Construc. Corp.*, 656 F.2d at 939 (noting that courts construe the term "default" in the Arbitration Act in light of the "preferences" of the Act). An applicant's participation in litigation on an arbitrable issue may form the basis for a finding of waiver, but the touchstone of waiver analysis is substantial prejudice. *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968) (noting that it is "the presence or absence of prejudice which is determinative"); *see In re Mercury Construc. Corp.*, 656 F.2d at 939–40; *Demsey & Assoc. v.*

*S.S. Sea Star*, 461 F.2d 1009, 1017–18 (2d Cir.1972); *Commercial Metals Co. v. International Union Marine Corp.*, 294 F.Supp. 570, 573 (S.D.N.Y.1968).

In *Demsey*, the Second Circuit observed that: "Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute waiver." 461 F.2d at 1018; *see Hart*, 453 F.2d at 1361 (answer on the merits); *see also* Domke, *supra*, § 19.01, at 277 (noting that "a mere answer or other preliminary steps in the litigation may not always constitute waiver"). Significantly, without more, an applicant's institution of a lawsuit on an arbitrable issue also does not establish waiver. *See Ank Shipping Co. v. Seychelles Nat. Commodity Co.*, 596 F.Supp. 1455, 1458 (S.D.N.Y.1984); *Masthead Mac Drilling Corp. v. Fleck*, 549 F.Supp. 854, 856 (S.D.N.Y.1982); *Commercial Metals*, 294 F.Supp. at 573.

To support a finding of substantial prejudice, the applicant must "substantially invok[e] the litigation machinery." *E.C. Ernst, Inc. v. Manhattan Construc. Co.*, 559 F.2d 268, 269 (5th Cir.1977), *cert. den. sub nom. Providence Hosp. v. Manhattan Construc. Co.*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978); *see Sweater Bee*, 754 F.2d at 461 (noting that the "litigation of substantial issues going to the merits may constitute a waiver"). As it relates to the 1987 declaratory judgment action, CIG's litigation activity can not satisfy this rigorous waiver standard. This conclusion is readily apparent upon examination of the case law.

Under the substantial-prejudice standard, judicial findings of waiver are rare. *See Demsey*, 461 F.2d at 1017–18; *cf. Weight Watchers of Quebec v. Weight Watchers International*, 398 F.Supp. 1057, 1060–61 (E.D.N.Y.1975) (finding waiver based on a fact-specific analysis, where the applicant answered on the merits, filed a motion for summary judgment, and waited until after the court's decision on the summary judgment motion to assert arbitration rights). Perhaps, the paradigmatic case of waiver is presented by the Second Circuit's decision

in *Demsey & Assoc. v. S.S. Sea Star, supra.* In *Demsey,* the applicant, a voyage charterer, was impleaded as a third-party defendant in an action involving damaged cargo. Before asserting its rights to arbitration, the *Demsey* applicant answered the third-party complaint on the merits; asserted a cross-claim, on which it received an answer; participated in discovery; and contested the merits at trial. Given the applicant's extensive participation in the litigation, the *Demsey* court could find "no cases" to support the applicant's demand for arbitration. 461 F.2d at 1018. The Court concluded that a determination of waiver was appropriate, noting that to require a retrial of the case by arbitration would amount to "a gross miscarriage of justice." *Id.*

Viewed in the light of *Demsey,* CIG's conduct in connection with its declaratory judgment action is wholly inadequate to support a finding of waiver. As filed on 15 May 1987 in Colorado state court, CIG's complaint does state a request for a declaration as to CIG's deficiency obligations, if any, under the take-or-pay contracts at issue here.[5] However, during the interval between the filing of CIG's complaint in Colorado state court and the dismissal of the action without prejudice before this Court, on 25 May 1988, the records of the litigation reveal little activity by the parties. In fact, during the life of the declaratory judgment action, the only major endeavor by CIG appears to have been its defense against the then-defendants' motion to dismiss or, alternatively, to stay. As it relates to the declaratory judgment action, CIG's conduct hardly amounts to a

"substantial[ ] invok[ation] [of] the litigation machinery," which would support a finding of waiver. *E.C. Ernst Inc.,* 559 F.2d at 269.

The plaintiffs' specific attempt to identify potential prejudice does not alter the Court's finding against waiver. The plaintiffs note that, because there are nonarbitrable issues raised by their fifth cause of action, the plaintiffs will be forced to return to the Court following arbitration for the resolution of these issues. According to the plaintiffs, the additional expenses the plaintiffs will incur, as a product of the return trip to the Court, will result in prejudice, and may be negated by the Court's resolution of the price redetermination issue, as well as the other nonarbitrable issues, now. The Court finds no indication that the plaintiffs' anticipated litigation expenses will be "unusually burdensome." *Masthead Mac Drilling Corp.,* 549 F.Supp. at 856; *see Tai Ping,* 731 F.2d at 1144–46; *Commercial Metals,* 294 F.Supp. at 573–74. Thus, under a substantial-prejudice standard, the Court concludes that the plaintiffs' asserted prejudice is inadequate to establish waiver.

### III.

The plaintiffs raise an alternative contention for rejection of CIG's motion to stay, based on their request for a declaratory judgment in their fifth cause of action.[6] Assuming a ruling by the Court in favor of CIG on arbitrability, the plaintiffs argue that the Court should, nevertheless, deny CIG's motion to stay because the plaintiffs' request for a declaratory judgment presents "prerequisite issues" that the

**5.** In their brief, the plaintiffs extensively trace the history of the parties' litigation on the price redetermination issue, beginning with CIG's institution of a declaratory judgment action in Colorado state court in May 1987. *See* Plaintiffs' Brief In Opposition To Defendant's Motion To Stay Proceeding, at 1–4. Because the history of this litigation is relevant to the issues presently before the Court (*e.g.,* waiver), the Court takes judicial notice of the records in its files regarding CIG's declaratory judgment action. *See St. Louis Baptist Temple v. FDIC,* 605 F.2d 1169, 1171–72 (10th Cir.1979); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.,* 533 F.2d

510, 521 (10th Cir.1976); *Ginsberg v. Thomas,* 170 F.2d 1, 2–3 (10th Cir.1948).

**6.** The novel nature of declaratory judgment actions, alone, does not preclude the Court from granting the defendant's motion to stay. *See Municipal Energy Agency v. Big Rivers Elec. Corp.,* 804 F.2d 338, 339, 342 (5th Cir.1986); *General Atomic Co. v. Duke Power Co.,* 420 F.Supp. 215, 216–17 (W.D.N.C.1976); *cf. Smith v. Metropolitan Property & Liability Ins.,* 629 F.2d 757, 759 (2d Cir.1980) (exercising discretion to decline to entertain a declaratory judgment action, given arbitration as a "fully adequate alternative remedy").

Court should resolve before the start of any arbitration proceedings. The plaintiffs' request for a declaratory judgment sets out contractual issues which are key determinants of their rights to payment from CIG. The plaintiffs contend that, because these contractual issues are nonarbitrable, the Court's ruling on their request for a declaratory judgment, prior to arbitration, "would more accurately define the issues which are outside the scope of arbitration" and, thus, presumably further the goal of efficient dispute resolution.

The plaintiffs' alternative argument for the denial of CIG's motion rests heavily on the reasoning of *Lehigh Coal & Navigation Co. v. Central Railroad*, 33 F.Supp. 362 (E.D.Pa.1940). In *Lehigh*, the plaintiff instituted a declaratory judgment action, seeking to have the court determine the extent of its liability to the defendant on a contract of carriage. The *Lehigh* plaintiff argued that, under the terms of the contract, it could not be held liable for alleged contractual violations occurring prior to 1938. The defendant, on the other hand, alleged that the plaintiff's potential liability extended back to the year of contract execution, 1926. Neither party disputed the arbitrability of the type of contractual violations at issue.

In opposition to the defendant's motion to dismiss, the *Lehigh* plaintiff argued that, "without a precise definition of the scope of the arbitration and of the issues involved," arbitration of the parties' dispute could result in a substantial waste of resources. *Id.* at 365. The plaintiff reasoned as follows: if the arbitrator erroneously ruled in favor of the defendant on the scope-of-liability issue and, ultimately, the plaintiff triumphed on that issue before a reviewing court, the parties would have needlessly incurred significant expense analyzing alleged violations before 1938. The *Lehigh* court accepted the plaintiff's rationale, noting the possibility that "the parties will be needlessly subjected to tremendous

expense and fruitless consumption of time." *Id.* at 365. Consequently, the court ruled against the defendant's motion to dismiss. Citing its power to review the arbitrator's decision for excesses, the court summarized its decision-making posture as to the scope-of-liability issue: "it is a case of 'Eventually—why not now?'"[7]

The *Lehigh* decision appears misguided, however, for it fails to give arbitration the benefit of the doubt. Based solely on speculation regarding future events in the litigation, the *Lehigh* court delayed the operation of the arbitral machinery. Yet, the Supreme Court has noted that, in enacting the Arbitration Act, Congress' manifest intent was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly as possible." *Moses H. Cone*, 460 U.S. at 22, 103 S.Ct. at 940. Under the Act, the boundaries of the courts' authority in arbitration cases is "narrowly circumscribed"; however commendable they may be, judicial notions of efficiency and fairness do not provide a license for trespass. *Tai Ping*, 731 F.2d at 1144.

The Fifth Circuit's decision in *Tai Ping Ins. Co. v. M/V Warschau*, illustrates this point well. In *Tai Ping*, the district court stayed the arbitration proceedings on the applicant's cross-claim pending the resolution of the main litigation, based on the opponent's concerns regarding the duplication of efforts that might result from permitting the arbitral resolution of the cross-claim issues first. The Fifth Circuit reversed, noting that the trial court had abused its discretion in light of the federal policy favoring arbitration. 731 F.2d at 1142, 1144-46. As for the opponent's concerns regarding duplication of efforts, the Fifth Circuit stated: "We think that these are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain." *Id.* at 1145.

---

**7.** *See* 9 U.S.C. § 10(d) (permitting judicial vacation of arbitration awards where "the arbitrators exceeded their powers"). Contrary to the apparent view in *Lehigh*, under Section 10, the scope of judicial discretion to vacate arbitration awards is narrowly defined, reflecting the federal policy favoring arbitration. *See Mobil Oil v. Asamera Oil*, 487 F.Supp. 63, 65 (S.D.N.Y.1980); *Shahmoon Indus. v. United Steel Workers*, 263 F.Supp. 10, 14 (D.N.J.1966).

The Court, therefore, declines to adopt the reasoning of the *Lehigh* decision. If appropriate, the Court will address the plaintiffs' request for declaratory relief at the conclusion of the arbitration proceedings on the price redetermination issue.

## IV.

By way of summary, the Court finds that (1) the plaintiffs' fifth cause of action states an arbitrable issue as to price redetermination, and (2) the defendant, CIG, has not waived its right to apply for a stay pursuant to the Federal Arbitration Act. In the exercise of its discretion, the Court stays the plaintiffs' fifth cause of action in its entirety.

It is so ordered.