MANHATTAN CONSTRUCTION COMPANY, Plaintiff,

v.

ROTEK, INC., DEFONTAINE–DEFINOX DIV., BERCO CRAWLER SYSTEMS, Defendant.

No. 95–C–498–H.

United States District Court, N.D. Oklahoma.

Aug. 31, 1995.

Alan W. Gentges, M. Alan Souter, Savage O'Donnell Scott McNulty, Affeldt & Gentges, Tulsa, OK, for plaintiff.

William S. Leach, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, Dennis Murphy, Jones Day Reavis & Pogue, Cleveland, OH, for defendant.

1. The statute provides that:
   [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration *under an agreement in writing for such arbitration,* the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitra-

## ORDER

HOLMES, District Judge.

This matter comes before the Court on a Motion to Stay Proceedings Pending Arbitration by Defendant Rotek, Inc. ("Rotek"). Pursuant to Section Three of the Federal Arbitration Act ("FAA"), Rotek asserts that Plaintiff's claims are arbitrable and that the Court should stay this lawsuit until the conclusion of such arbitration.[1] Plaintiff objects to arbitration.

### I.

The facts necessary for the Court to resolve Rotek's Motion are not in dispute. *See* Rotek's Reply in Support of Its Motion to Stay Proceedings Pending Arbitration at 2.

Prior to August 19, 1993, Plaintiff Manhattan Construction Company ("Manhattan") contacted Rotek to determine whether Rotek could inspect, test, and, if necessary, repair a ring gear that is used in a tower crane. On August 19, 1993, prior to inspecting the ring gear, Rotek sent a one page quote to Manhattan via facsimile. The quote contained the following information:

Gentlemen:

We are pleased to quote as follows:

Model No.: 061.50.1637.000.49.1504

Description:

Inspect, re-engineer and refurbish customer bearing to like new condition, inspect and test the completed unit as required. The repair involves some combination of the following:

—New inner ring to match existing outer ring.

—Sand blast.

—Non-destructive tests, measurements and visual examination to determine sequence of operations.

tion has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. (emphasis added). 9 U.S.C. § 3; *see also Adair Bus Sales, Inc. v. Blue Bird Corp.,* 25 F.3d 953, 955 (10th Cir.1994) (under Section Three, the proper course is for district court to stay, rather than to dismiss, action pending arbitration).

—Furnace draw-back the case hardness.

—Reround and flatten.

—Machine to virgin material.

—Reinduction harden.

—Reround and flatten.

—Remachine and/or grind.

—Non-destructive tests.

—Hand detail and fit the assembly.

—Inspect and test.

—Prepare for shipment.

*See below

Inner ring is cracked/scrap.

Note: Regardless of the great care taken to determine the degree of wear/distress and the possibility of repair, there is always the possibility of uncovering a deeper than expected damage which negates the possibility [sic] of a successful repair.

Quantity: 1

Net Price Each: $5000.00

Terms: Net 30 days after date of invoice, subject to credit approval.

F.O.B.: Aurora, OH

Delivery: 9 Weeks ARO

THIS QUOTATION IS MADE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE HEREOF—

All recommendations or opinions with reference to choice of products and installation of such products are offered without charge and without obligation. Of necessity we cannot be responsible for performance of our products beyond our warranty of satisfactory material and workmanship.

The quote was signed by Todd Troyer, Service Technician. Despite the reference on the quote to the "terms and conditions set forth on the reverse side hereof", Manhattan did not receive the reverse side of the quote. Further, the facsimile transmission was not followed by a hard copy of the quote.

On August 23, 1993, Jim Adams, Equipment Manager for Manhattan, contacted Rotek and authorized Rotek to make the required repairs. At that time, Manhattan sent the ring gear to Rotek. Prior to September 30, 1993, Rotek performed the agreed-upon work and returned the ring gear to Manhattan. On September 30, 1993, Rotek mailed an invoice to Manhattan covering the work performed. The reverse side of the invoice contained language styled as "TERMS AND CONDITIONS FOR SALE". Paragraph (10) provides:

ARBITRATION. Any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be conducted in Cleveland, Ohio, or at such other place as the parties may agree, by one arbitrator independent of the parties appointed by them by mutual agreement or by the President of the American Arbitration Association.

Manhattan then paid the invoice in full without questioning any of the terms and conditions on the back of the invoice.

## II.

The Federal Arbitration Act embodies a "strong pro-arbitration policy". *Marlin Oil Corp. v. Colorado Interstate Gas Co.*, 700 F.Supp. 1076, 1078 (W.D.Okla.1988); *e.g., Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1360 (10th Cir.1971). The party seeking the stay pending arbitration under Section Three has the burden of proving that:

(1) the issue is one which is referable to arbitration under an agreement in writing for such arbitration; and (2) the party applying for the stay is not in default in proceeding with such arbitration. (citations omitted)

*Pioneer Supply Co. v. American Meter Co.*, 484 F.Supp. 227, 229 (W.D.Okla.1979); *see also McKinley v. Martin*, 722 F.Supp. 697, 703 (D.Wyo.1989). Further, "the question of whether the parties agreed to arbitrate is to be decided by the court." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

■ To effectuate the purposes of the Federal Arbitration Act, courts generally "resolve all doubts regarding the arbitrability of issues in favor of arbitration." *Marlin Oil Corp.*, 700 F.Supp. at 1078–79. However, a party cannot be compelled to arbitrate a dispute unless he or she has agreed to do so. *AT & T Technologies, Inc.*, 475 U.S. at 648–49, 106 S.Ct. at 1418–19; *McKinley*, 722 F.Supp. at 702.[2] "The central focus of arbitrability analysis is, of course, the parties' intent." *Marlin Oil Corp.*, 700 F.Supp. at 1079 n. 4.

■ It is clear that Manhattan and Rotek reached an agreement regarding the repair of the ring gear. Based upon the arbitration provision on the reverse side of the invoice, which provision was sent to Manhattan *after* Rotek performed under the parties' agreement, Rotek asserts that Plaintiff's claims must now be arbitrated. Plaintiff, however, argues that it did not agree to arbitration. The dispositive issue is thus whether the parties' agreement regarding the repair of the ring gear included the arbitration provision upon which Rotek now relies.

To determine the arbitrability of this dispute, the Court must analyze the parties' agreement under applicable contract formation principles. Manhattan analyzes the contract between the parties as follows: (1) the facsimile quote dated August 19, 1993 constituted an offer and (2) Manhattan's authorization for Rotek to perform the repair and the shipping of the ring gear to Rotek constituted an acceptance.

To the contrary, Rotek asserts that the terms of the facsimile quote were not sufficiently certain to constitute an offer. Rotek offers two competing views of the contract formation: either (1) Manhattan's authorization for Rotek to repair the ring gear was the offer; (2) the invoice dated September 30, 1993, which imposed new terms and materially altered the contract, was a counter-offer; and (3) Manhattan accepted the counter-offer when it paid the invoice without objecting to its terms; or (1) the Rotek invoice was the

offer and (2) Manhattan's payment of the invoice evidenced its acceptance. Under either of Rotek's analyses, the parties' agreement may include the arbitration provision because the provision, set forth in either the offer or the counter-offer which was then accepted, was a term of the contract.

If, on the other hand, the Court adopts the reasoning of Manhattan, then the agreement does not include an arbitration provision because it is undisputed that the facsimile quote, the alleged offer, did not contain an arbitration provision. Therefore, to resolve this dispute, the Court must determine at which point the contract to repair the ring gear was formed under the circumstances presented here.

■ Generally, a price quotation is not an offer but is rather "an invitation to enter into negotiations or a preliminary solicitation of an offer." *Master Palletizer Sys., Inc. v. T.S. Ragsdale Co.*, 725 F.Supp. 1525, 1531 (D.Colo.1989), *aff'd without op.*, 937 F.2d 616 (10th Cir.1991); *e.g., Bergquist Co. v. Sunroc Corp.*, 777 F.Supp. 1236, 1248 (E.D.Pa.1991). However, if sufficiently detailed, price quotations "can amount to an offer creating the power of acceptance". *Id.* (citing *Brown Machine v. Hercules, Inc.*, 770 S.W.2d 416 (Mo. Ct.App.1989)); *Gulf States Utils. Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F.Supp. 538, 549 (M.D.La.1993); *Bergquist Co.*, 777 F.Supp. at 1248; *Quaker State Mushroom Co. v. Dominick's Finer Foods*, 635 F.Supp. 1281, 1284 (N.D.Ill.1986); *Maurice Elec. Supply Co. v. Anderson Safeway Guard Rail Corp.*, 632 F.Supp. 1082, 1087 (D.D.C.1986); *see, e.g., Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924, 925 (9th Cir.1979).

Therefore, in the first instance, the Court must determine whether the facsimile quote dated August 19, 1993 was sufficiently detailed to constitute an offer. *See, e.g., Gulf States Utils. Co.*, 819 F.Supp. at 549 (To amount to an offer, it must reasonably appear from the quote "that assent to the quote

**2.** *E.g., Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1512–16 (3d Cir.1994) (individuals who were principals of options market maker and who signed Letter Agreement which was

part of workout were not bound by arbitration provision in another workout document which individuals had not signed), *aff'd,* — U.S. —, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

is all that is needed to ripen the offer into a contract.").[3]

In deciding this same issue, the *Master Palletizer* court examined the language of the quote, its cover letter, the subsequent purchase order, and the acceptance letter:

> The cover letter accompanying the proposal mentioned that Smith Ragsdale should contact Master "to discuss the operation" and that different options are available. Thus, when Ragsdale submitted its purchase order on August 31, 1985, it offered to purchase the system from Master. Master accepted Ragsdale's offer in its September 10, 1985 letter which stated, "[t]he following letter is being submitted as Master Conveyor's *acceptance* of referenced purchase orders." (emphasis in original).

725 F.Supp. at 1531. The *Bergquist* court also discussed whether a quote was an offer under the circumstances presented by that case:

> ... many factors ... would support a finding that the price quotation is an offer. The price quotation was developed after some negotiation between the parties and after Sunroc had submitted its own specifications. This is not a situation where a price quote was unsolicited; rather, it was a specific response to McShane's request. The price quotation is detailed and includes a description of the product, a listing of various quantities at various prices, a die charge, delivery terms, and payment terms. The price quotation states: "This quotation is *offered for your acceptance within 30 days....*" (emphasis in original). Thus, it appears Bergquist may have intended this price quotation to be an offer inviting acceptance ... Finally, the price paid by Sunroc for the first purchase Q Pad II was that listed in the price quotation rather than the lesser price appearing

in Sunroc's purchase order. This certainly shows the parties had the price quotation in mind during the transaction.

. . . . .

> Yet there is also strong evidence the price quotation was not an offer. It is labelled "price quotation" in six places. The list of quantities and prices available for the Q Pad II resembles a menu rather than a specific offer to sell a particular quantity at a particular price ... Most important is the ambiguous small print at the bottom of the quotation. It states: "This quotation is offered for your acceptance within 30 days and *is subject to material availability and price in effect at time of shipment....*" (emphasis in original). This clause suggests Bergquist did not intend to be bound by the terms of the price quotation, but reserved the right to change the price up to the time of shipment.

777 F.Supp. at 1249 (court left question to the jury to decide based upon the document itself and the surrounding circumstances at the time of its issuance).

Here, there is strong evidence that Rotek intended the quote to be an offer.[4] The price quote was not unsolicited; rather, it was a specific response to Manhattan's request. The Court finds the quote to be quite detailed, as it included a model number, an elaborate description of services to be performed, the quantity and price, and delivery and payment terms. Finally, the price paid by Manhattan was the price listed in the quote—$5,000.00.

Further, there is no indication that an immediate acceptance of the quote by Manhattan would not form an agreement. In other words, Rotek did not offer the quote "subject to further approval". And there is nothing in the quote to suggest that Rotek did not intend to be bound by its terms.[5] In

---

3. "A price quotation that is subject to the seller's confirmation is not an offer because the buyer's assent will not consummate the contract." *Gulf States Utils. Co.,* 819 F.Supp. at 549; *Quaker State Mushroom Co.,* 635 F.Supp. at 1284.

4. The parties have not submitted any evidence regarding past bargaining history or course of dealing.

5. The Court is cognizant that "the submission of a purchase order by a buyer in response to a price quotation usually constitutes the offer." *Master Palletizer Sys., Inc.,* 725 F.Supp. at 1531. However, here, Manhattan telephoned Rotek to authorize Rotek to perform the work. This phone call was followed with a one page telecopy cover letter stating:

fact, Rotek performed in accordance with the quote promptly following Manhattan's acceptance of its terms.

Based upon the foregoing analysis, the Court finds that Rotek has not met its burden of proving that the arbitration clause was encompassed within the parties' agreement. It is probable that the parties intended the facsimile quote to be an offer, which offer was accepted by Manhattan's telephone call to Rotek and one page telecopy cover letter.

 The Court notes that, even if the facsimile quote were not an offer as a matter of law, Rotek's Motion still must fail. The Court believes that, even if the parties intended the quote only to be an invitation for an offer, the following occurred: (1) the facsimile quote was an invitation for an offer; (2) the one page telecopy transmission from Manhattan to Rotek, which encompassed the terms of the quote, was the offer; (3) and Rotek accepted Manhattan's offer with performance under the contract—the repair of the ring gear, *see, e.g., Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993) (it is elemental that "a unilateral offer may be accepted by the other party's conduct and thereby give rise to contractual obligations."). Under this analysis as well, the arbitration provision is not a term of the parties' final agreement because it was not injected into the parties' dealings until after the offer and the acceptance of the offer by Rotek's repair of the ring gear.

The Court concludes that, based upon the facts of this case, each of the alternative analyses set forth by the Court above more accurately depicts the intent of the parties than the analyses offered by Defendant. Therefore, the contract was formed no later than the performance by Rotek of the repair of the ring gear. Accordingly, the agree-

Please go ahead and make the required repairs to our ring gear bearing assembly. Ship to address is above, billing is as follows:
Manhattan Construction
111 West 5th St., Suite 1000
Tulsa, OK. 74103–4235
Attn: Jim Adams
There was a handwritten notation on the telecopy which stated, "P.O. # Verbal: Jim". Manhattan did not submit a detailed purchase order to Rotek.

ment to repair the ring gear does not contain an arbitration provision. Consequently, this Court may not force Manhattan to resolve its dispute in arbitration when it never agreed to that forum. The Court therefore denies Rotek's Motion to Stay Proceedings Pending Arbitration (Docket # 8).

IT IS SO ORDERED.

It does not appear that the parties intended that telecopy to be the offer. Manhattan instructed Rotek to "go ahead and make the required repairs". This instruction necessarily refers back to the parties' previous communication—the quote. The one page telecopy does not contain detailed information about the repair—unlike the quote. There is no price information. If the telecopy were the offer, it would fail because its terms are not sufficiently certain.