BOISE CASCADE CORPORATION,
Plaintiff and Counterclaim
Defendant

v.

RELIANCE NATIONAL INDEMNITY
CO. INC., Defendant

and

Koch–Glitsch, Inc. f/k/a Koch Engineering Co., Inc., and Ballard International Corp., Inc., Counterclaim Plaintiffs

Civil No. 98–258–PC.

United States District Court,
D. Maine.

Feb. 2, 2001.

Theodore H. Kirchner, James D. Poliquin, Norman, Hanson & Detroy, Portland, ME, for Boise Cascade Corp.

Jeffrey T. Edwards, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for Reliance National Indemnity Co.

Daniel Nuzzi, Brann & Isaacson, David Bertoni, Brann & Isaacson, Lewiston, ME, for Koch–Glitsch Inc.

David Bertoni, Brann & Isaacson, Lewiston, ME, Theodore H. Kirchner, Norman, Hanson & Detroy, Portland, ME, for Ballard International Corp., Inc.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This case arises out of a prior lawsuit brought against Boise Cascade Corporation ("Boise") by four Koch–Glitsch, Inc. (f/k/a Koch Engineering Company, Inc. and hereinafter "Koch")[1] employees who were injured at Boise's paper mill in Rumford, Maine while performing work under

---

1. For ease of reference, the Court will use the term "Koch" to refer to Koch–Glitsch, Inc. and/or Ballard International Corp., Inc. It was adduced at trial that Koch Engineering Co., Inc. acquired Ballard on or about August 1, 1994, when Koch Engineering purchased the stock of Ballard. Koch and Ballard assert in a post-trial brief that Ballard was, after acquisition, a wholly owned subsidiary of Koch Engineering. Reply Memorandum of Defendants Koch and Ballard (Docket No. 72). The Court will assume that Ballard remains a wholly owned subsidiary of Koch–Glitsch, Inc.

a contract between Boise and Koch. That personal injury case was settled before trial. In the present action, Boise has sued Koch and Reliance National Insurance Company ("Reliance"), claiming that both entities breached their contracts with Boise by declining to defend Boise and by refusing to reimburse Boise for the defense costs and settlement amounts in the lawsuits brought by the injured Koch employees. The Court previously granted summary judgment for Koch on Boise's claims against Koch. *See* Memorandum of Decision and Order (Docket No. 56). After the Court's summary judgment ruling, two claims were left to be resolved at trial: Boise's claim against Reliance and a counterclaim filed by Koch against Boise. The remaining claim from Boise's Complaint asserts that Reliance breached its contractual obligations under the insurance policy and that, as a result, Boise is entitled to recover from Reliance its defense costs and the settlement payments made in connection with the injured Koch employees' suits. Reliance responds that it had no duty to defend or reimburse Boise. Koch's counterclaim against Boise asserts entitlement to recover attorneys' fees and costs incurred in connection with this action by Boise.[2] After a nonjury trial, the Court makes the following findings of fact and conclusions of law.

## FACTS

There was little dispute about the facts presented at the one-day trial. The evidence established that on June 28, 1995, Stephen Clarke, a Koch representative, provided Boise with a quote for the annual inspection and repair of some tile-lined tanks at the Boise mill. Trial Ex. 27. Koch's written estimate was for $263,700, with additional line items for work on the "E/O Washer" and the "Blend Chest" at an estimated cost of $8,750 and $19,200, respectively. Since the quote was based on estimated time and materials, Koch also included a price schedule for time, materials, and equipment necessary to complete the work in excess of the quotation. *Id.* The written quote stated: "The attached Field Service Group Standard Terms and Conditions are made part of this proposal" ("the Koch standard terms"). *Id.* Koch's standard terms were included with the quote as a separate document. In addition to the quote, Clarke completed and signed a Boise "Contractor Bid Form." *Id.*

In response to Koch's quote, on August 1, 1995, Anthony Koris, a purchasing agent for Boise, completed, signed, and sent a purchase order to Koch for the inspection and repair of the tanks. Trial Ex. 101. The purchase order referenced the "pricing in [Koch's] proposal" and included Boise's standard terms and conditions ("the Boise standard terms") on the back side of the purchase order. *Id.* On August 7, 1995, Clarke signed the acknowledgment copy of Boise's purchase order. Next to Clarke's signature on the purchase order was the language "I (WE) _____ hereby accept this PURCHASE ORDER solely on the Terms & Conditions set forth herein." *Id.* In addition to signing his name on the acknowledgment purchase order, Clarke wrote the words "Knight/Ballard KECI [Koch Engineering Company, Incorporated]" in the blank space provided. *Id.* Along with the signed acknowledgment purchase order, Clarke sent Boise a cover letter which stated that "THE ACCEPTANCE OF THIS PURCHASE ORDER IS BASED ON THE ATTACHED TERMS AND CONDITIONS" of Koch. Trial Ex. 11.[3] The testimony at trial established that the representatives of Boise and Koch never

---

2. Koch's attorneys' fees claim against Boise requires a finding that Koch's standard terms control the contract between Boise and Koch, an issue the Court did not resolve in its summary judgment order.

3. Although never found, the parties agreed at trial that along with the cover letter and the acknowledgment copy of Boise's purchase order was another copy of the Koch standard terms.

discussed whose terms would control the contract.

## DISCUSSION

Both Boise's remaining claim against Reliance and Koch's counterclaim against Boise turn, in part, on the question as to whether Boise's terms or Koch's terms control the contract between Boise and Koch. The Court will first resolve this issue. The Court will then be able to address Boise's breach of contract claim against Reliance. Finally, the Court will consider whether Koch is entitled to recover attorneys' fees under its counterclaim.

### A. Terms of the Contract

It is agreed that the Koch employees were to inspect and repair some tanks at the Boise mill pursuant to a contract. The parties, however, hold differing views on whose terms control the contract. It is asserted by Koch and Reliance that Koch's standard terms control the contract and, thus, that Reliance did not have a duty to name Boise as an additional insured. On the other hand, Boise asserts that its standard terms control and, thus, that Reliance did have a duty to defend and indemnify Boise in the suit brought by the injured Koch employees.

Koch and Reliance proffer two circumstances whereby Koch's standard terms apply. Both theories depend upon Koch's June 28th proposal being a valid offer. First, Koch argues that Boise orally accepted its offer. Second, Koch asserts that its offer was accepted when Boise sent its purchase order that expressly referenced Koch's price quotation to Koch. Therefore, Koch and Reliance argue that Koch's standard terms control the contract and Koch had no duty to name Boise as an additional insured. Boise asserts that its standard terms apply because Koch signed its purchase order and thereby explicitly agreed to be bound by Boise's standard terms.

 Koch's June 28th proposal was a price quotation and the Court finds that it did not constitute an offer. As the Court previously stated in its summary judgment decision, estimates are typically not treated as offers, but, instead, they are usually understood to be an invitation to offer or the initiation of negotiation. *See* 17A Am. Jur.2d *Contracts* § 45. Under some circumstances, however, an estimate can serve as an offer, creating in the recipient the power of acceptance. *Id.* But to treat an estimate as an offer, the language of the estimate, and the context of the estimate in the negotiations between the parties, "must be so definite as to constitute a clear meeting of the minds." *Taft–Peirce Mfg. Co. v. Seagate Technology, Inc.*, 789 F.Supp. 1220, 1223 (D.R.I.1992). "[W]hether a price quote may be considered an offer in any given case is a question of fact dependent on the nature of the particular acts or conduct and the circumstances surrounding the transaction." *Maurice Elec. Supply Co., Inc. v. Anderson Safeway Guard Rail Corp.*, 632 F.Supp. 1082, 1087 (D.D.C.1986). Based on the testimony at trial and its review of the June 28th proposal, the Court finds that the language and context of the proposal did not render it an offer.

Koch argues that its price quotation was the offer and relies on a number of cases for support of its argument that its price quote was an offer. All of those cases are distinguishable because none of the cases involve a situation in which both contracting parties sign a singular document. *See Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.*, 58 F.3d 1227, 1229 (7th Cir.1995); *Daitom Inc. v. Pennwalt Corporation*, 741 F.2d 1569, 1575 (10th Cir.1984); *Rich Products Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937, 957 (E.D.Wis. 1999); *ASIC II Ltd. v. Stonhard, Inc.*, 63 F.Supp.2d 85, 90 (D.Me.1999); *Manhattan Constr. Co. v. Rotek, Inc.*, 905 F.Supp. 971, 974 (N.D.Okla.1995); *Bergquist Co. v. Sunroc Corp.*, 777 F.Supp. 1236, 1248 (E.D.Pa.1991); *Reaction Molding Technologies, Inc. v. General Electric Co.*, 585 F.Supp. 1097 (E.D.Pa.1984); *Earl M. Jor-*

*gensen Co. v. Mark Construction, Inc.,* 56 Haw. 466, 540 P.2d 978, 981 (1975); *Howard v. Maine Industrial School,* 78 Me. 230, 3 A. 657 (1886).

Even if the Court were to find that Koch's June 28th price quotation was an offer, Koch's standard terms included in the price quotation did not become part of the contract. Koch's offer expired, by its own terms, on July 28 and was no longer capable of being accepted after that date. Trial Ex. 10 ("Koch's quotation is valid for 30 days from the date of the quotation unless otherwise stated."). Although Clarke testified that he had a conversation with Scot Oldham, a Boise representative, in which Oldham told Clarke that the project was approved and the purchase order was on its way, there was no evidence that this conversation took place before Koch's offer expired on July 28. Likewise, Koch's expired offer could not have been accepted by Boise's purchase order issued on August 1. Koch's June 28 proposal, the Court finds, expired before it was accepted by Boise.

 Boise's August 1st purchase order was an offer. Although Koch argues that the purchase order itself did not provide sufficient detail of the work to be performed at the mill to constitute an offer, the purchase order did reference Koch's proposal in order to provide the specifics of the work to be completed. It is appropriate to look outside the purchase order to the extent called for by the purchase order, to provide details of the work which are not inconsistent with the provisions of the purchase order. Boise made its offer on the explicit condition that its own standard terms and conditions governed the contract. Boise's purchase order provides that the "accept[ance of] this PURCHASE ORDER [is] solely on the Terms & Conditions set forth herein." Trial Ex. 101. Koch accepted Boise's offer when Clarke signed the acknowledgment copy of the purchase order, agreeing to Boise's terms and conditions. In addition to signing his name, Clarke wrote the words "Knight/Ballard KECI [Koch Engineering Company, Incorporated]" in the blank space next to his signature on the front of the purchase order where he agreed, on behalf of Koch, to Boise's standard terms. *Id.* The phrase "Terms & Conditions set forth *herein*" clearly refers to Boise's terms printed on the back of the purchase order and could not reasonably be understood by Clarke to refer to Koch's terms, which were enclosed separately. *Id.* In addition, Boise's standard terms printed on the back of the purchase order expressly indicate that its terms control.

> Buyer objects to the inclusion of any different or additional terms by Seller in Seller's acceptance of this PO. *If Seller includes or attaches any different or additional terms in Seller's purported acceptance . . . a contract of sale will result upon the terms and conditions as stated herein, without inclusion of any different or additional terms and conditions.*

*Id.* (emphasis added).

 Nevertheless, Koch and Reliance advance the theory that, because Clarke did not intend Boise's standard terms to govern when he signed the purchase order, there was never a meeting of the minds with respect to incorporation of Boise's standard terms into the contract and, thus, those terms never became part of the contract between the parties. The Court disagrees. Mutual assent, the modern expression for the concept of "meeting of the minds," is essential to contract formation. 1 Corbin, *Contracts* § 4.13 at 634–35 (1993). For the Court to find that Clarke did not intend Boise's terms to govern, it would have to look beyond the express manifestation of his assent on the purchase order to his testimony of subjective intent at the time he signed the contract. When endeavoring to give effect to the intention of the parties, looking to their testimony as to their subjective intentions or understandings accomplishes no more than a restatement of their conflicting positions. The requisite mutual assent cannot be

based upon the hidden intent of the parties but, rather, must be founded upon an objective manifestation of mutual intent on the essential terms of the promise. *Pahlavi v. Palandjian,* 809 F.2d 938, 945 (1st Cir.1987) (commenting that "contracting parties are bound by objective manifestations and expressions, not subjective expectations")(citing Restatement (Second) of Contracts § 2, comment b (1981)). A party's intention will be held to be what a reasonable man in the position of the other party would conclude his manifestations to mean. John D. Calamari & Joseph M. Perillo, *Law of Contracts,* § 2.2, p. 26 (1998); 13 *Williston on Contracts,* § 1536, p. 11 (3d ed.1970). Despite his testimony to the contrary, Clarke's signature objectively expresses his agreement with Boise's terms and conditions.[4] Here, when Clarke completed the blank and signed Boise's purchase order, he agreed, on behalf of Koch, to Boise's standard terms. At trial, Koch offered no evidence of actions or statements made by Clarke during the negotiation of, or when entering into, the contract that lead the Court to conclude that his signature did not represent his intentions. The Court, therefore, concludes that by Clarke's signature, Koch expressed its intention to be bound by Boise's standard terms. As a result of these findings, the Court holds that Boise's standard terms govern the contract.

### B. The Insurance Procurement Provision of Boise's Standard Terms

■ Boise's standard terms, which control the contract for the inspection and repair of the tanks, require an entity which is to perform work on Boise premises to carry certain insurance coverage and to name Boise as an additional insured on the seller's liability insurance policy. Specifically, Boise's standard terms state:

9. *Site Work:* If Seller is to perform any work . . . at the office or on property of Buyer, Seller shall carry at Seller's own expense: . . . (b) Contractor's Comprehensive General Liability Insurance, with limits for bodily injury and property damage of not less than $1,000,000 per occurrence, which policy shall include premises and operation coverage, blanket contractual coverage, Owner's and Contractor's protective coverage, and completed operations coverage . . . . Seller shall, prior to commencing work, provide Buyer with certificates evidencing all such coverages in insurance companies acceptable to Buyer. Such certificates shall (a) . . . name Buyer, its subsidiaries, affiliates, directors, officers, and employees and additional insured with respect to liability, or any claims of liability, arising out of the work performed by Seller that affords the additional insureds the same coverage as if the additional insureds were the named insured . . . .

Trial Ex. 101. Boise argues that under the terms of the contract between Koch and Boise, Reliance had a duty to defend Boise in the underlying litigation brought by the injured Koch employees and that Reliance breached its duty when it denied Boise a defense and reimbursement for the settlement in the Koch employees' personal injury lawsuits. Reliance counters that it had no duty to defend Boise under these terms.

This contractual agreement between Boise and Koch results in Boise becoming an additional insured under Koch's policy with Reliance. Under a preexisting insurance contract between Reliance and Koch, Reliance agreed to insure any entity that Koch promised to insure.[5] Thus, once the

---

4. Not only is Clarke's testimony that he did not understand that he was agreeing to Boise's terms and conditions by signing the purchase order irrelevant under the applicable objective principles of contract law, the Court did not believe Clarke's testimony that he did not understand that he was agreeing to Boise's terms and conditions by signing the purchase order.

5. The Reliance/Koch insurance policy was in effect from December 1, 1994, through December 1, 1995.

contract providing for Boise to be named as an additional insured was executed, Reliance had a duty to insure Boise for such work. The Reliance policy states, in relevant part:

### ADDITIONAL INSURED/NAMED INSURED ENDORSEMENT

A. ADDITIONAL INSUREDS/NAMED INSUREDS SHALL INCLUDE ANY COMPANY, JOINT STOCK COMPANY, JOINT VENTURE, TRUST OR OTHER LEGAL ENTITY, OR INTEREST THEREIN, HERETOFORE, NOW OR HEREAFTER CONSTITUTED FOR WHICH ANY NAMED INSURED IS RESPONSIBLE:

1. TO ARRANGE INSURANCE, OR

2. TO ADD AS AN ADDITIONAL INSURED, OR

3. TO ADD AS AN ADDITIONAL NAMED INSURED,

BUT ONLY TO SUCH EXTENT (SUBJECT TO ALL OTHER PROVISIONS OF THE POLICY) AND FOR SUCH LIMITS OF LIABILITY AND FOR SUCH COVERAGES AS THE NAMED INSURED, BEFORE LOSS, HAS AGREED:

A. BY CERTIFICATE OF INSURANCE TO PROVIDE OR, . . .

B. IN THE ABSENCE OF A CERTIFICATE OF INSURANCE, BY CONTRACT OR AGREEMENT TO PROVIDE FOR SUCH INTEREST.

B. SUCH INSURANCE AS IS PROVIDED UNDER THIS PROVISION SHALL BE PRIMARY INSURANCE, PROVISIONS OF THIS POLICY TO THE CONTRARY NOTWITHSTANDING, IF THE NAMED INSURED HAS AGREED TO PROVIDE PRIMARY INSURANCE.

C. IN THE ABSENCE OF SPECIFIC OBLIGATIONS TO THE CONTRARY WHICH MAY BE CONTAINED IN ANY CONTRACT OR AGREEMENT INTO WHICH THE NAMED INSURED MAY HAVE ENTERED, THE INCLUSION OF OTHER PERSONS OR ORGANIZATIONS . . . AS ADDITIONAL INSURED HEREUNDER SHALL BE LIMITED TO THEIR LIABILITY FOR THE CONDUCT OF THE NAMED INSURED.

Trial Ex. 100, Endorsement No. 14. This endorsement provides additional insured status to any entity which the named insured—Koch—is responsible to add as an additional insured. However, this endorsement explicitly limits Reliance's coverage to that afforded in the insurance certificate or, in the absence of such certificate, to the terms of the contract between the insured and the named additional insured. As described in detail below, at the time Boise and Koch entered into the contract at issue in this case, Reliance had already issued a certificate of insurance reflecting Boise's status as an additional insured to Boise. Trial Ex. 30. Boise argues, however, that the certificate does not govern the insurance relationship between Boise and Reliance. Thus, Boise asserts, the contract between Boise and Koch governs the extent of Boise's coverage as an additional insured. Under either the insurance certificate issued to Boise from Reliance or the contract between Boise and Koch, Reliance did not have a duty to insure Boise for its own negligence.

On January 17, 1999, approximately six months before the contract for the tank work was executed, Koch sent a certificate of insurance to Boise. Trial Ex. 30. Shortly thereafter, the insurance certificate was received and reviewed by Anthony Koris in the ordinary course of his job as purchasing manager for Boise. While Koris testified that he did not have a specific recollection of reviewing the certificate of insurance, he did testify that after receiving the certificate, he made several "OK" notations on the documents signify-

ing that at the time the certificates were reviewed, they were acceptable to Boise. *Id.* Koris further testified that the information regarding the status of suppliers' insurance certificates is maintained on Boise's computer system to provide a means for checking the status of Boise's vendor's insurance obligations. Koris explained that before issuing a purchase order, it was his practice to check Boise's computer system for the types and amounts of insurance the contractor carried. If the insurance coverage reflected on Boise's computer system was insufficient, Koris testified, he would not have issued the purchase order. The evidence adduced at trial did not indicate that Koris objected to the certificate or otherwise notified anyone at Koch that the certificate was not acceptable to Boise. The certificate, which was issued on January 17, 1995, would not expire until December 1, 1995. The Koch employees were injured shortly after work on this project began in September 1995, months before the certificate expired. The Court, therefore, finds that the insurance certificate remained in effect during the September 1995 contract between Boise and Koch.

The certificate reflects that the insurance procured by Koch from Reliance included commercial general liability, automobile, worker's compensation, and employers' liability. The certificate also provides that "BOISE CASCADE CORP., ITS DIRECTORS, OFFICERS AND AGENTS ARE NAMED AS ADDITIONAL INSUREDS PER ATTACHMENT." *Id.* The attachment to the certificate, captioned "Additional Insured," provides that Boise was an additional insured "but only with respect to liability arising out of the negligent acts

or omissions of the Named Insured." *Id.* The attached endorsement continues, providing that "[t]his insurance does not apply to[ ] bodily injury or property damage arising out of any act or omission of the additional insured or any of his employees." *Id.* Based on the certificate, therefore, Boise was an additional insured, but only for its liability arising out of the negligent acts or omissions of Koch; in no event would Boise be entitled to coverage under the Reliance policy for bodily injury arising out of Boise's own acts or omissions. Boise has never disputed in this action that the injuries to the Koch employees resulted from Boise's negligence. Because Reliance only contracted to defend Boise for claims arising out of Koch's acts or omissions, Reliance did not breach its contract with Boise by declining to defend Boise in the suit brought by the injured Koch employees.

Alternatively, even if the Court were to determine that the insurance certificate was not valid, it would still conclude that Reliance did not breach its insurance agreement with Boise. The insurance policy directs that in the absence of a certificate of insurance the extent of coverage be governed by the contract between the insured and the additional insured. Reference to the contract between Koch and Boise would result in the same conclusion since the Court has already determined on summary judgment in this case that the contract between Boise and Koch did not provide for insurance covering Boise for its own negligence.[6]

### C. Koch and Ballard's Counterclaims

Koch and Ballard's counterclaims are based on an indemnification provision in

---

6. Boise argues that the Court should apply insurance law, rather than contract law, to determine the meaning of the "arising out of" language in Boise's contract standard terms. The Court disagrees. Boise's argument assumes that the insurance policy provides for coverage to be determined, in the absence of a certificate of insurance, by the contract *terms*. The Reliance policy provides that in the absence of a certificate of insurance, coverage is determined by Koch's contractual obligation to provide for such insurance. It is appropriate for the Court to use contract law to determine the meaning of the contract where the insurance policy does not itself provide for incorporation of the specific contract *language*.

Koch's terms and conditions. Koch's standard terms provide, in relevant part:

> Customer will be solely responsible for and shall indemnify Koch against all liability, loss, damage, costs or expenses, including attorney's fees, resulting from death, personal injury, loss of or physical damage to property caused solely by the acts of Customer . . . .

Trial Ex. 10. The Court's finding that Boise's terms control the contract prevents Koch or Ballard from prevailing on their counterclaims.

## CONCLUSION

Accordingly, the Court **ORDERS** that judgment be entered for Reliance National Indemnity Insurance Company, Inc. on Boise Cascade Corporation's breach of contract claim (Count I). The Court further **ORDERS** that judgment be entered for Boise Cascade Corporation on Koch–Glitsch, Inc. and Ballard International Corp., Inc.'s Counterclaims. The Court further ORDERS that judgment be entered for Ballard International Corp., Inc. on Boise Cascade Corporation's breach of contract claim (Count III) and reformation claim (Count II).[7]

---

**7.** The Court's April 28, 2000 Summary Judgment Order granted summary judgment for Koch–Glitsch, Inc. on Counts II and III. Boise's claims against Ballard are identical to the claims asserted against Koch. To the extent Ballard is a separate entity from Koch, the Summary Judgment Order should have also granted summary judgment for Ballard on Counts II and III.